UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------ x
SHANNON Z.,¹                                                 :
                                                             :
                               Plaintiff,                    :
                                                             :            MEMORANDUM &
         -against-                                           :            ORDER
                                                             :
KILOLO KIJAKAZI, ACTING COMMISSIONER                         :            3:21-CV-1501 (VDO)
OF SOCIAL SECURITY,                                          :
                                                             :
                               Defendant.                    x
------------------------------------------------------------
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Shannon Z. commenced this action to seek judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner") ruling that she is not entitled to disability insurance benefits ("DIB") under the Social Security Act. Plaintiff filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 16.) The Commissioner filed a cross-motion to affirm the decision. (ECF No. 17.) For the reasons set forth below, Plaintiff's motion is **granted** and Defendant's motion is **denied**.

**I.     BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in the Commissioner's Response to Plaintiff's Statement of Facts (ECF No. 15-2), which the Court adopts and incorporates by reference.

---

[1] Plaintiff is identified by her first name and last initial pursuant to a January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

On November 11, 2018, Plaintiff applied for DIB, alleging disability beginning on March 22, 2018. (Certified Administrative Record ("R."), at 214.[2]) Plaintiff's claim was denied on April 17, 2019 (R. at 86), and was again denied upon reconsideration on September 18, 2019. (R. at 104.) On September 23, 2019, Plaintiff requested a hearing before an Administrative Law Judge. (R. at 139.) Plaintiff, Plaintiff's attorney (Richard B. Grabow), and an impartial vocational expert (Linda N. Vause) participated in a hearing before an ALJ (Judge Michael McKenna) on September 25, 2020. (R. at 12, 20.)

On February 11, 2022, the ALJ found Plaintiff to be not disabled under sections 216(i) and 223(d) of the Social Security Act, and thus not entitled to DIB. (R. at 20.) The Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for appellate review. (R. at 1.)

Plaintiff filed this action on November 10, 2021. (ECF No. 1.) On March 22, 2022, Plaintiff moved for judgment on the pleadings. (ECF No. 12.) Defendant cross-moved on May 22, 2022. (ECF No. 15.) The briefing concluded on June 15, 2022. (ECF No. 18.)

## II.   STANDARD OF REVIEW

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the

---

[2] "R." refers to the Certified Administrative Record filed at ECF No. 6. The pagination refers to the pagination on the bottom right-hand corner of the record, as opposed to the ECF pagination.

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled, thus qualifying a claimant to benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(a)). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)." *Schillo*, 31 F.4th at 70.

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved for the SSA, the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III.   DISCUSSION

Plaintiff brings three arguments with respect to the ALJ's decision, contending the following: **(1)** that, at step three, the ALJ erred in evaluating Plaintiff's impairments under Listing 1.04A; **(2)** that the ALJ erred in ignoring evidence showing Plaintiff has significant limitations; and **(3)** that, at step four, the ALJ erred in evaluating Plaintiff's RFC by failing to comply with POMS D1 25510.001 and 21 CFR 404.1594. (ECF No. 12-1 at 9–19.) As discussed below, the Court finds that the ALJ erred at step three in analyzing whether Plaintiff's impairments satisfied Listing 1.04(A), and thus remands the case for further findings.

### A.   Substantial Evidence Does Not Support The ALJ's Conclusion That Plaintiff's Impairments Did Not Meet Or Equal The Standards Set Forth In Listing 1.04A

At step three, an ALJ determines whether a claimant is disabled by evaluating whether the claimant's impairment, or a combination thereof, meets or equals the severity of those listed in the Listing of Impairments. *Schillo*, 31 F.4th at 70. Certain impairments "create an irrebuttable presumption of disability" and, where an impairment is equal to a listed impairment, there can be "finding of such a disability *per se*." *DeChirico v. Callahan*, 134

F.3d 1177, 1180 (2d Cir. 1998). To meet the criteria of Listing 1.04 regarding disorders of the spine, a claimant must show:

> evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.TR. pt. 404, subpt. P, app. 1, § 1.04(A); *see also Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007). A claimant "bears the burden of proving that her impairments meet the particular Listing." *Rivera v. Berryhill*, No. 3:17-CV-01760 (SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019).

> Here, the ALJ's determination at step three rests on the following rationale:
>
> The claimant's impairments do not meet or equal the criteria of listing 1.04 because although the claimant has a disorder of the spine, it has not resulted in compromise of a nerve root, loss of motor function, and a positive straight-leg raise. The claimant's treatment records do not indicate evidence of nerve root involvement.

(R. at 16.) Plaintiff contends that the ALJ's rationale is legally insufficient, in that it is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ's findings are directly contradicted by the medical evidence in the record. (ECF No. 12-1 at 10–15.) In response, the Commissioner acknowledges that Plaintiff had some positive findings of the elements of Listing 1.04A during the relevant period (ECF No. 15-1 at 5), but also asserts that Plaintiff fails to meet all requirements, arguing that the record does not show limitations that are simultaneous and continue for at least a 12–month period. (*Id* at 4–5.) In reply, Plaintiff contends that the Commissioner is offering a *post hoc* rationalization for the ALJ's decision and applying an improper legal standard for Listing 1.04A. (ECF No. 18 at 2–4.)

Considering each of the requirements of Listing 1.04A in turn, the Court finds that the ALJ's reasoning is inadequate to support a determination that Plaintiff did not meet or medically equal Listing 1.04 on substantial evidence review.

### 1. Nerve Root Compression

Substantial evidence does not support the ALJ finding that Plaintiff's spinal disorder did not result in compromise of a nerve root. The ALJ cursorily discussed this requirement, but the record shows that there is a colorable claim that Plaintiff's spinal disorder involves the nerve root. The August 2019 lumbar spine MRI showed "moderate to severe right foraminal stenosis[3] at L4-5 where there is also a grade I spondylolisthesis" and that Plaintiff "had degenerative disc disease at L4-5 and L5-S1." (R. at 666.) Consequently, in October 2019, Dr. Lantner found that Plaintiff was "a candidate for a right sided L4-5 facetectomy[4] with bilateral instrumentation to address the foraminal stenosis and spondylolisthesis." (R. at 667.) The facetectomy and instrumented arthrodesis were scheduled for November 2019. (R. at 668.) Plaintiff elected to proceed with surgical intervention because of her "intractable pain and

---

[3] "'Foraminal stenosis' refers to a condition in which the passage through which the spinal cord runs in the bones of the spine becomes clogged and **can press on the nerves**." *Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 273 (E.D.N.Y. 2021) (citing *Foraminal Stenosis*, Cedars Sinai, https://www.cedars-sinai.org/health-library/diseases-and-conditions/f/foraminal-stenosis.html) (emphasis added).

[4] "A facetectomy refers to 'an open back surgery designed to remove a portion of spine growth that results from facet disease and has **impacted a nerve in the spinal column**.'" *Myers v. Berryhill*, No. 16-CV-04567 (PKC), 2018 WL 1459451, at *5 (E.D.N.Y. Mar. 23, 2018) (citing *What is a Facetectomy?,* Laser Spine Institute, https://www.laserspineinstitute.com/articles/facetectomy_articles/ectomy/291/) (emphasis added).

dorsiflexor weakness." (R. at 670.) Dr. Lantner performed surgery on Plaintiff, including the following procedure:

> Right L4-L5 laminotomy with complete facetectomy and foraminotomy of the entire of the entire right L4 exiting nerve root and proximal right L5 nerve root, far lateral right L4-L5 diskectomy.

(R. at 669.) Dr. Lantner included the following postoperative diagnoses, "L5-S1 grade I spondylolisthesis with far lateral right severe foraminal stenosis at L4 from combination of disk and facet tissue with intractable low back and right lower extremity radicular pain." (R. at 669.) The record showing Plaintiff's severe foraminal stenosis and related facetectomy surgery therefore supports Plaintiff's argument that her spinal disorder resulted in nerve root compression.

In light of the abundant medical evidence in the record supporting Plaintiff's claim of nerve root involvement, including the records of Plaintiff's MRI and surgery, no substantial evidence supports the ALJ's conclusion that Plaintiff's spinal disorder did not result in compromise of a nerve root.

### 2. Limitation of Motion of the Spine and Motor Loss Accompanied by Sensory or Reflex Loss

Substantial evidence does not support the ALJ finding that Plaintiff's spinal disorder resulted in no loss of motor function. Listing 1.04A lists "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. pt. 404, subpt. P, app. 1, sec. 1.04, 1.04A. The ALJ's decision contradicts the finding of no loss of motor function in the subsequent step four analysis, finding that "[e]xamination findings noted antalgic gait and some tenderness in the paraspinal muscles" (R. at 17), and that "there is some reduced strength in the lower extremities." (R. at 18.) The record evidence also shows

multiple instances of a medical professional finding that Plaintiff had an impaired or limited range of motion ("ROM"). On August 2, 2017, at a physical therapy initial evaluation, Michael Liguore, PT diagnosed Plaintiff with "Chronic right-sided low back pain with right-sided sciatica" and found that Plaintiff had an impaired ROM. (R. at 829–830.) On August 23, 2019, at an initial medical visit, Kevin Sadowski, APRN, DC, diagnosed Plaintiff with "Intervertebral disc disorders with radiculopathy, lumbar region[,]" "Low back pain[,]" and "Spondylolisthesis, lumbar region." (R. at 714.) An examination of Plaintiff's lumbar found restricted flexion (40/60) with pain and restricted extension (16/25) with pain. (R. at 714.) On October 10, 2019, Dr. Lantner evaluated Plaintiff and found that Plaintiff had "difficulty with heel walking on the right." (R. at 666.) On May 20, 2020, at another physical therapy initial evaluation, Plaintiff was diagnosed with "weakness of both lower extremities" and "impaired mobility," and had an impaired ROM (R. at 849–850.)

The record further shows Plaintiff's sensory loss. On May 18, 2018, at a consult visit, Dr. Alizadeh evaluated the plaintiff, who reported low back pain radiating down both legs, numbness and tingling in hands and feet. (R. at 420.) During a June 3, 2019 monthly pain management visit with Wojciech Junger, APRN, Plaintiff reported that her foot can go numb if she bends over or if she stands for a longer period of time. (R. at 545.) Plaintiff again reported numbness and tingling in an August 26, 2019 medical office visit. (R. at 708–709.)

Accordingly, no substantial evidence supports the ALJ's conclusion that Plaintiff's spinal disorder did not result in a loss of motor function.

### 3. Positive Straight Leg Raising Test

Substantial evidence does not support the ALJ finding that Plaintiff's spinal disorder did not result in a positive straight-leg raise test. Missing from the ALJ's reasoning at step

8

three is any analysis of Plaintiff's medical evidence regarding a straight-leg raise test. The record, however, documents a positive straight leg raising ("SLR") test on both hips on May 20, 2020. (R. at 951.) Therefore, no substantial evidence supports the ALJ's conclusion that Plaintiff's spinal disorder did not result in a positive straight-leg raise test.

### B. Remand Is Appropriate

Where a court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ[,]" the court should "remand the case for further findings or a clearer explanation for the decision." *Brandi H. v. Kijakazi*, No. 3:21-CV-01411 (KAD), 2022 WL 3028004, at *4 (D. Conn. Aug. 1, 2022) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). "It is "particularly important for the ALJ to specifically address evidence with respect to the step three analysis because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se* and is eligible to receive benefits." *Giambrone v. Colvin*, No. 15-cv-05882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. 2017) (internal quotation marks and citation omitted).

In this case, there is abundant evidence supporting that Plaintiff satisfied the requirements under Listing 1.04A. Yet the ALJ's step-three reasoning is conclusory and other portions of the decision either contradict the findings or otherwise leave them unexplained. The ALJ also failed to reconcile conflicting evidence regarding Plaintiff's nerve root compression, motor loss, and positive straight leg raising tests. As such, the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record." *Brandi*, 2022 WL 3028004, at *4. Because the Court cannot find that substantial evidence supports the ALJ's conclusion

that Plaintiff's spinal impairment did not meet or equal the requirements of Listing 1.04A, the Court concludes that remand is warranted in this case.

On remand, the ALJ shall provide a more fulsome review of the evidence in this Order at step three. "[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

## IV. CONCLUSION

For the preceding reasons, the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **DENIED** and Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and to remand this matter to the Commissioner for rehearing and further proceedings pursuant to 42 U.S.C. § 405(g) and consistent with this Memorandum and Order. On remand, the Commissioner shall specifically consider the record evidence regarding criteria relevant to Listing 1.04(A) and articulate reasons for accepting or rejecting such evidence in determining whether Plaintiff's impairments meet the severity requirements.

The Clerk of the Court is further instructed that if a subsequent appeal to this Court is made following remand, it is to be directly assigned to the undersigned.

**SO ORDERED.**

Hartford, Connecticut
February 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge